IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2005 NOV 22  A  9: 48

GEORGE HOEY MORRIS

        Plaintiff,

vs.

HOMELAND SECURITY
IMMIGRATION CUSTOMS ENFORCEMENT
THOMAS CORAM JR. (INDIVIDUALLY)

        Defendants.

)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.: 2:05cv1118-T

# Complaint

This is a complaint for violation of the plaintiff's right for freedom from unreasonable search without a warrant guaranteed by the Constitution of the United States of America.  This is a complaint for the violation of Plaintiff George Hoey Morris' right for freedom from unlawful imprisonment.

## Jurisdiction

1.      Plaintiff invokes jurisdiction of the United States District Court for the Middle District of Alabama Northern Division.

## Venue

2.      Venue is appropriate in the Middle District of Alabama because Defendant Thomas Coram Jr. is a resident of the Middle District of Alabama.

3.      Venue is appropriate in the Middle District of Alabama because Homeland Security and Immigration and Customs Enforcement maintain a presence in the Middle District of Alabama.

4.    Venue is appropriate in the Middle District of Alabama because a substantial part of the events or omissions giving rise to these claims occurred in the Middle District of Alabama.

# Parties

5.    Plaintiff George Hoey Morris (hereinafter referred to as "Morris") is an adult citizen and resident of Elmore County, Alabama.

6.    Defendant Thomas Coram, Jr. (hereinafter referred to as "Coram") is an adult citizen and is a resident of Elmore County, Alabama.

7.    Defendants Homeland Security and Defendant Immigration Customs Enforcement (hereinafter referred to as "ICE") are Coram's employers and maintain a presence in The Middle District of Alabama.

# Factual Background

**Comes now,** the above referenced Plaintiff with the above styled case appearing *pro se* to show this honorable court the following.

8.    On 20 November 2004, someone illegally manufactured an explosive device (molotov cocktail) and placed same on Morris' porch along with a note threatening violent action against Morris. Morris called the FBI and Special Agent Margaret Faulkner responded with an interview about that incident.

9.    On 20 January 2005 Agent Faulkner and Coram (now and hereinafter designated as having been acting under the auspices and authority of Homeland Security and ICE) executed three search warrants on Morris' homes in search of child pornography. The warrants were unsuccessful in that they found no illegal photography.

10.    Eclectic Police Department (hereinafter referred to as "EPD") officer Tim Phillips stopped William Morris and Heather Morrison on a public road and asked if he could search their vehicle. William and Heather said "No" whereupon Officer Phillips directed them to drive to the search site where EPD under the orders and direct supervision of Coram thoroughly searched their vehicle without a warrant and over

their strenuous objections. For fear of retaliation, William and Heather have opted NOT to be a party to this lawsuit.

11.    Coram ordered William and Heather to give their baby to EPD whereupon officer Ruth Peters searched the child's diaper under the direct supervision of Coram and over his parents objections while they were illegally detained and forcibly restrained and despite the fact that Coram had no warrant.

12.    All the warrants and the illegal searches had negative results and Morris was free to go. Morris drove to Texas where Coram on 27 January 2005 caused the FBI and the Houston Police Department to handcuff Morris while they executed another search warrant seeking child pornography. The search had negative results and the FBI told Morris he was free to go.

13.    Coram became frustrated at his inability to incarcerate Morris and told the two FBI investigators a lie; that Morris was a fugitive from justice in Alabama and that there existed a warrant for Morris for forgery. Neither statement was true but Coram's lies induced the FBI and the Houston Police Department to place Morris under arrest.

14.    Morris posted bail in Texas and then drove to Alabama where he presented himself and discovered that Elmore County officers could find no record of any arrest warrant at that time. Two hours later, Coram caused a warrant to be hastily produced and issued by the Alabama Attorney General's office charging Morris with forgery because Morris had renewed his Alabama driver's license and had signed "George Hoey Morris." Morris was incarcerated and made bail.

15.    Several weeks later; when Morris was driving to that forgery hearing, Coram's good friend EPD chief Gordon Ledbetter arrested Morris without a warrant. The timing of that arrest was the result of an illegal conspiracy and designed to cause Morris to miss that hearing. Ledbetter wrote up the warrant while Morris was handcuffed at the jail and during the time Morris was required in Court. In fact, the arrest warrant was created at about the same time as a failure to appear warrant was issued approximately 400

yards away. Ledbetter refused to notify the Court of Morris' arrest.

16. Morris posted bond and was released to discover that Ledbetter had towed his vehicle to Tallassee rather than arranging a tow by Morris' friend and tow truck operator "Letts" as Morris had requested. The trunk and interior of Morris' car were later found to be in disarray; the result of an illegal search of that vehicle.

17. Coram was unable to find a single photograph for which Morris could be arrested. After spending months closely examining thousands of photos and files and about 150 pounds of confiscated documents, Coram discovered a four year old fiance visa that Morris had used to apply for a visa for his Vietnamese wife. Morris had written "none" in a blank reserved for information regarding "former husbands and wives." Morris had already allowed the application to expire because of his failure to follow through with the application process.

18. Coram, on the basis of this error, arranged Morris' arrest by four ICE agents and perhaps one dozen other officers. They searched Morris' vehicle while Morris was handcuffed and while one officer covered him with a shotgun. Mr. Coram made that "one word error" on an expired second party visa application the basis for a massive operation and arrested Morris in front of his friends and neighbors leaving the impression that Morris was guilty of a hideous crime. Coram had no arrest warrant and he had no search warrant. Despite this, he arrested Morris and searched his car.

19. Approximately 60 days later, Coram swore a misleading affidavit causing the Grand Jury to erroneously believe that Morris had violated a statute designed to punish immigration and passport fraud. The Grand Jury indicted Morris on that statute despite the fact that it does not apply and as a direct result of Coram's misleading testimony. Morris had already spent 2 months under arrest before he was indicted.

20. Morris was released on a $25,000 bond and submitted to electronic monitoring and random drug testing.

21.    Morris drove to his attorney's office several weeks later and Coram called Morris' probation officer Bernard Ross to see if Morris had permission to leave his home. Morris' attorney had failed to notify Ross of the visit and he told Coram that Morris was absent without leave.

22.    With his mistaken belief that Morris was violating his probation, Coram arranged the arrest of Morris. As soon as he entered Elmore County, Morris was pulled over by a Wetumpka Police officer who said there were two failure to appear warrants in Eclectic. They transported Morris to the Elmore County jail where employees said there was no warrant. A few hours later EPD officer Ruth Peters delivered two hand written warrants to the jail. The warrants were false. Morris posted bond and returned to Eclectic.

23.    Coram is well aware of the fact that Morris in 1997, after being deported on 3 occasions for doing scientific research in Vietnam, changed his name to Johnny Ray Fortune. Morris used the identity papers to circumvent travel restrictions in Vietnam and Morris continued use of this birth name while residing in the USA with the full knowledge of the CIA and FBI.

24.    Coram; with total knowledge of the reason for the name change and knowing that Morris' only victim was the communist government of Vietnam, generated five different forgery or false name charges against Morris for signing his birth name on traffic tickets or other documents. He also caused each charge to be a felony when in fact it should have been a misdemeanor. His motive for these misleading charges was to cause Morris' incarceration. These arrests are listed below.

(a) *Morris was arrested in Texas for renewing his Alabama Driver's License one year earlier as "George Hoey Morris." Morris was rearrested in Alabama on the same charge of signing his name; which according to Coram is a felony.*

(b.) *Coram caused a warrant (felony) to be issued after Morris signed his name on a speeding ticket that had been paid months earlier.*

*(c.) Coram communicated with a Florida officer and convinced her to issue three felony warrants for Morris signing his own name.*

25.    Coram engaged in a conspiracy with Covington County District Attorney Eugenia Loggins, The Alabama Attorney General's Office (Loggins' attorney), Attorney General employee and Eclectic Mayor Alan Nummy, the EPD, and at least one Alabama State Patrol Officer in an illegal effort to cause Morris' incarceration and thereby derail Morris' claim for compensation for the unlawful seizure of 1000 books titled "virginbride.net" and 800 compact discs titled "Young Models."

26.    The actions taken by these coconspirators caused the violation of Morris' constitutional rights with two searches of Morris' home without a warrant, five warrantless searches of Morris' vehicle, and one warrantless search of Heather's vehicle. These unconstitutional searches by Coram and his coconspirators are listed below.

*(a) Alabama State Trooper Daniel Dean, with the assistance of the entire EPD, searched Morris' vehicle without a warrant and despite Morris' demands for constitutional protection. Morris filed suit whereupon Coram and Officer Dean conspired and arrested Morris on a felony charge of giving a false name to a police officer. This charge should have been classified a misdemeanor. In fact, Morris never gave his name to the officer. Morris had signed a speeding ticket with his own name "George Hoey Morris" and paid the ticket.*

*(b) On a night during which the entire EPD was doing overt surveillance on Morris' home, Heather left in Morris' vehicle and was stopped by EPD before she traveled 500 yards. EPD officer Chris Miles demanded she open her trunk because he suspected she was smuggling a garbage bag from the home. He had no warrant.*

*(c) Later that same night Officer Ruth Peters and another EPD officer awoke Morris to inquire about a "missing juvenile female." Morris answered all their questions but refused to allow them to "come inside*

*and look around."* Officer Peters thanked Morris for his cooperation and left. *Approximately 15 minutes later Chief Gordon Ledbetter returned with the entire EPD, demanded entry over Morris' objections and took total control of the house for eight hours during which he conducted a major warrantless search involving a dog that did not alert. He then ambushed William when he returned home and searched his vehicle without a warrant and over his objections. EPD eventually claimed they found a tiny residue of a leafy substance and drug paraphernalia and placed Morris under arrest. The substance may not have been drugs at all. Morris' vehicle was thoroughly searched; also without a warrant.*

(d)  *Morris, while traveling to the Elmore County courthouse to answer charges of "fraud" on the premise that he had committed a crime when he renewed his drivers license as "George Hoey Morris," was pulled over by EPD Chief Gordon Ledbetter. The timing of the arrest creates a very strong likelihood that this was an illegal conspiracy involving Coram. Morris was arrested without a warrant on a harassment charge (this charge was later dismissed) and Morris' vehicle was thoroughly searched without a warrant during the time Ledbetter wrote up the harassment warrant and while a failure to appear warrant was also issued for Morris.*

(e)  *Morris' vehicle was searched without a warrant by 4 ICE agents and one dozen other law enforcement officers under the direction of Coram when Morris was taken into custody by Coram and placed under federal custody. Coram had neither an arrest nor a search warrant. Morris was illegally held in custody approximately 2 months before he was indicted on 29 June 2005.*

(f)  *Heather's vehicle was searched without a warrant and over her objections during a legal search of Morris' home. Further discussion of this incident would be redundant as it is described in the foregoing portion of this complaint.*

(g)  *Coram and Ledbetter, in an effort to create further problems for Morris and his family, had caused a Department of Human Resources investigator to "drop in" unannounced. After several such visits, Morris informed the investigator to arrange all further visits through his attorney and provided her his card.*

Page 7

*She arrived again unannounced and Morris told her once again to arrange the visit through his attorney. She returned a few minutes later with Ledbetter; and Morris called 911 to request assistance to keep Ledbetter out. After four sheriffs arrived, Morris was placed in the rear of a patrol car in handcuffs "for his own safety" while police searched his home without a warrant. They confiscated William's 22 caliber rifle from William's closet. It had no ammunition and had a large bulky knife duct taped on the end. Coram later took Morris' voluntary admission of a 26 year old drug felony and charged Morris with being a felon and a drug addict in possession of a firearm; a weapon he did not even know was there.*

*The DHR employee, who used her investigation as the premise of the search, concluded the baby was being cared for.*

*(h) During the time immediately after Morris' arrest on nonexistent "failure to appear" warrants by request from EPD, Morris' keys were in the possession of the arresting officer who could have (and possibly did) search the vehicle without a warrant. This potential incident; unlike the aforementioned, is pure speculation.*

27.    Coram used the enhanced powers provided under Homeland Security laws after the terrorist incident on 11 September 2001 to monitor Morris' communication by phone and mail. He initiated a worldwide search for Morris' so called "victims" and engaged every tool at his disposal to find evidence of child sex tourism, child pornography, human trafficking and child eroticism. He confiscated all of Morris' photos, files, and records without ever finding a single photograph to substantiate a charge. With the full knowledge that Morris had been investigated since 02 April 2002 in search of child pornography with negative results, and with his knowledge that his own investigation found no illegal photography; Coram testified under oath that Morris was under investigation for child pornography in front of a US magistrate. In view of the fact that he had to have known that Morris' produced nor possessed no such illegal material, this was perjury. This perjury caused Morris' unlawful imprisonment pending trial.

28.    Coram testified under oath in US Federal Court that Morris was charged with fraud, forgery, and giving a false name to a police officer. With the full knowledge that these charges were generated by him

by using false and misleading statements, Coram testified in a manner that led the magistrate to believe that there existed some type of fraud when in fact there was no victim. He created the illusion that other independent agencies were aware of Morris' so called "crimes" and were acting independently when in fact every charge involved Morris' legal use of his own name. This testimony caused Morris' unlawful imprisonment pending trial.

29.    Coram took control over the FBI investigation concerning the explosive device and terrorist threat. He did this so that he could generate his own conclusions. Coram knowingly falsified the results of that investigation to make it appear that Morris had illegally manufactured that device and had written the terrorist threat. He testified under oath that he had compared the handwriting on the note with known samples of Morris' handwriting and that he was certain that Morris had committed those crimes. He did not inform the Court that he had provided that evidence to forensics for an examination. Coram is in all likelihood withholding these investigation results. Coram's perjury caused Magistrate Susan Russ Walker to declare Morris a danger to the community and to order his unlawful imprisonment pending trial.

30.    Coram testified under oath that Morris' book "virginbride.net" has photographs of underage females in "provocative positions" when in fact this is not true. He provided the Court with a few photographs from Morris' website "virginbride.org" that he had electronically obscured the face and crotch area creating the illusion that these were examples of illegal photography when in fact every photograph on the website is legal and in many ways resembles a J.C. Penny or Sears catalogue. His testimony influenced the Court so heavily that by the end of the two hour hearing the District Attorney was discussing Morris' "child pornography business" as if it were fact. This misleading testimony helped to cause Morris unlawful imprisonment.

31.    Coram testified in Federal Court under oath that Morris had approached four underage females and requested that they pose for photographs in their panties and bra. Circumstances and further investigation have since proven that this is untrue testimony. Testimony will show that he knew these allegations to be false.

32.     Coram told so many lies on 17 June 2005 that it created the illusion that Morris was a danger to the community and a horrendous criminal. The transcript of that hearing contains testimony that he must have known was false and therefore he is guilty of perjury. In his quest to incarcerate Morris and as a result of his continued failure to do so; Coram intentionally committed perjury in order to obtain his goal. A review of the transcript will show this to be true. There is a transcript.

33.     Coram, in an effort to remove Morris' economic power began telling family members that he would seize family property held in Morris' name with the assertion that Morris had smoked marijuana with a minor on that land. He said that if Morris would relinquish control over the property that he would not seize the property. Coram began to contact Morris' family members to detail his plans to seize the property. This unwarranted contact caused apprehension and uncertainty within the family. This contact caused Morris' father to initiate a lawsuit to remove Morris' interest in that property.

34.     Over a period of time Coram became more aggressive and began to threaten family members with investigations and criminal charges if they helped Morris or did not assist in his efforts to force Morris to relinquish control of the real estate. He had Morris' sister Phyllis and Morris' brother David relay specific threats regarding Morris' children's participation in his websites. He threatened to involve William and Heather in charges that they manufactured child pornography and said he had proof that he would use that could jail them for a decade. He said he would cause that investigation if they assisted Morris in any way or failed to help cause Morris to relinquish control over the family estate. Coram was committing extortion and coercion. Morris subpoenaed Coram to produce confiscated records regarding Morris' interest in the property. Coram provided only a few chosen documents and withheld information vital to Morris' claim. He did not produce the records.

35.     After it became apparent that Morris would not relinquish control, Coram began to solicit false testimony from family members concerning Morris' alleged molestation of his minor female relatives. He threatened further legal problems and said that he would initiate investigations on family members who failed to assist him in his quest to destroy Morris. He continued with this behavior until Morris filed a

complaint with the FBI charging Coram with extortion. The US Magistrates office refused to transport Morris to the civil hearing and on 08 November 2005 a Judge erroneously and in Morris' absence confiscated Morris' property.

36.     Coram describes Morris as a "child molester," a "child predator," a "pervert" and other derogatory terms to Morris' neighbors. He does this despite the fact that Morris has never been convicted or even accused of such a crime. Coram has generated press releases that caused newspapers to publish stories connecting Morris to child pornography, child sex tourism, human trafficking and other hideous crimes against children. He has presented these falsehoods as fact so often that the vast majority of people believe them to be true.

37.     Coram brags and boasts to his neighbors in Eclectic that he is going to "get Morris off the streets" before Coram retires in a few months. Coram told Morris' sister Phyllis that his career objective is to put Morris in jail. After his legitimate efforts failed, Coram then resorted to illegal methods and finally to committing perjury in order to place Morris in jail and thereby save face in the neighborhood, camouflage the fact that he has spent perhaps hundreds of thousands of dollars on a "wild goose chase," and to limit Morris' ability to defend himself against Coram's charges.

38.     **And finally,** Coram generated a voting fraud charge in Northwest Florida, by informing Sheriff's there that Morris had a felony conviction in 1980 and has registered to vote in 1999 in Okaloosa County. During the process of arranging the charge, Coram told them some lies. One of the deputies issued a press release that Morris was engaged in child sex. The "TOP story" on Montgomery's WSFA 12 was titled "Eclectic Man Under Scrutiny In Child Sex Case." Associated Press picked up the story and circulated it worldwide. The story included a report that "Agents are looking into allegations that he was involved in unlawful sex with hundreds of minor females between the ages of 11 and 15 in other countries. They include Vietnam, Thailand, and Mexico." Despite the fact that these allegations are not true, the report further damaged Morris reputation and limited his chances for a fair trial in the other cases generated by Coram.

## 𝕎𝔥𝔢𝔯𝔢𝔣𝔬𝔯𝔢, the aforementioned premises considered:

Plaintiff Morris prays that this Court order the immediate return of all computer and photography equipment, photographs, compact discs, floppy discs, documents, files, notes, and all other confiscated items and that Coram be required to show cause for any single photograph or item not returned.

Plaintiff Morris prays that this Court require Coram to cease and desist from filing or initiating any further complaints or warrants against him through the use of false or misleading statements and that Coram immediately issue a public statement acknowledging the fact that there has been no evidence discovered linking Morris to child pornography, child eroticism, child sex tours, human trafficking, statutory rape, child molesting or any of the other crimes against children that Coram claims have occurred.

Without such an acknowledgment from Coram it is impossible for Morris to obtain a fair trial on the other so called "crimes" for which Coram has caused Morris to be arrested. Without such an acknowledgment Morris' friends and neighbors will continue to believe Coram's lies.

# 𝔉𝔦𝔯𝔰𝔱 ℭ𝔞𝔲𝔰𝔢 𝔬𝔣 𝔄𝔠𝔱𝔦𝔬𝔫

39.    Plaintiff George Hoey Morris realleges and incorporates by reference paragraphs 1 through 38 as if set forth fully herein.

40.    The arrest of Morris in Texas and his incarceration there without a warrant and for signing his birth name is a violation of Morris' protection from unlawful imprisonment guaranteed him by the United States Constitution.

41.    The actions of Coram caused Morris' unlawful imprisonment, stress, financial hardship, embarrassment, mental anguish, distress and humiliation.

## 𝕎𝔥𝔢𝔯𝔢𝔣𝔬𝔯𝔢, Plaintiff George Hoey Morris demands:

a.    A judgement against the defendants in the amount of $15,000 compensatory damages and $35,000 for punitive damages.

b.    Such other, further, or different relief to which Plaintiff may be entitled.

## Second Cause of Action

42.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 38 as if set forth fully herein.

43.    The arrest and incarceration of Morris in Alabama after his return from Texas on the charge that he had signed his own name was a frustrated attempt by Coram to jail Morris and is a violation of his protection against unlawful imprisonment that is guaranteed him by the United States Constitution.

44.    This action by Coram caused Morris unlawful imprisonment, extreme stress, financial hardship, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff George Hoey Morris demands:

a.    A judgement against the defendants in the amount of $15,000 compensatory damages and $35,000 for punitive damages.

b.    Such other, further or different relief to which Plaintiff may be entitled.

## Third Cause of Action

45.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 38 as if set forth fully herein.

46.    The illegal arrest without a warrant resulting from the conspiracy between Coram and Ledbetter

was a deliberate attempt to cause Morris to miss his forgery hearing and is a violation of his Constitutional protection against unlawful imprisonment.

47.    This action by Coram caused Morris to miss a court hearing and for a failure to appear warrant to be issued for his arrest and unlawful imprisonment, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

48.    This action by Coram resulted in a search of Morris' vehicle without a warrant and is a violation of Plaintiffs protection against unlawful searches guaranteed by the United States Constitution.

## 𝖂𝖍𝖊𝖗𝖊𝖋𝖔𝖗𝖊, Plaintiff George Hoey Morris demands:

    a.    A judgement against the defendants in the amount of $15,000 compensatory damages and $35,000 for punitive damages.

    b.    Such other, further, or different relief to which Plaintiff may be entitled.

## Fourth Cause of Action

49.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 38 as if set forth fully herein.

50.    The arrest of Morris by ICE and a dozen police officers because of a small error made on a fiance visa application four years prior and without a warrant constitutes an over reaction and an effort to get Morris in jail by a frustrated Coram using a statute that does not apply.

51.    Morris arrest and incarceration because he had written "none" in a space asking about "former husbands and wives" and arrest in full view of all his friends and neighbors left the false impression that Morris was guilty of a hideous crime. This illegal arrest occurred approximately 60 days before his indictment; another gross violation of Morris' Constitutional rights.

52.    This action by Coram caused Morris unlawful imprisonment, search without a warrant, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff Morris demands:

a.    A judgement against the Defendants in the amount of $50,000 compensatory damages and $100,000 punitive damages.

b.    Such action, further or different relief to which Plaintiff may be entitled.

## Fifth Cause of Action

Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 38 as if set forth fully herein.

53.    The arrest of Morris by Wetumpka Police without a warrant was the result of an illegal conspiracy involving Coram and designed to cause a violation of Morris' probation.

54.    This action by Coram caused Morris' unlawful imprisonment, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff Morris demands:

a.    A judgement against the Defendants in the amount of $15,000 compensatory damages and $35,000 punitive damages.

b.    Such action, further or different relief to which Plaintiff may be entitled.

## Sixth Cause of Action

55.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 38 as if it set forth fully herein.

56.    The acts of Coram's coconspirators at his direction caused Morris' home and vehicle to be searched without a warrant on numerous occasions (to be detailed in Court) and caused a violation of Morris protection against unreasonable searches guaranteed by the United States Constitution.

57.    This action by Coram caused Morris' unlawful imprisonment, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

## Wherefore, Plaintiff Morris demands:

    a.    A judgement against the Defendants in the amount of $50,000 compensatory damages and $100,000 punitive damages.

    b.    Such action, further or different relief to which Plaintiff may be entitled.

## Seventh Cause of Action

58.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 38 as if it is set forth fully herein.

59.    The perjury under oath by Coram that is too numerous to attempt to detail without a transcript of the detention hearing caused Magistrate Susan Russ Walker to erroneously believe Morris to be a danger to the community and a flight risk and to order his imprisonment pending trial.  A review of the transcript will identify said perjury.

60.    This perjury by Coram caused Morris' unlawful imprisonment, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

## Wherefore, Plaintiff Morris demands:

    a.    A judgement against the Defendants in the amount of $1,000,000.00 compensatory damages and $2,000,000.00 punitive damages.

b.    Such action, further or different relief to which Plaintiff may be entitled.

# Eighth Cause of Action

61.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 38 as if it is set forth fully herein.

62.    Coram's falsification of the results of an FBI investigation and perjury about these falsified results caused Magistrate Susan Russ Walker to believe that Morris had manufactured an illegal explosive device and had written a terrorist threat and declare Morris was a danger to the community and to order Morris held without bond.

63.    This action by Coram caused Morris' unlawful imprisonment, extreme stress, financial hardships, embarrassment, mental anguish, distress and humiliation.

**Wherefore,** Plaintiff Morris demands:

a.    A judgement against the Defendants in the amount of $10,000 compensatory damages and $30,000 punitive damages.

b.    Such action, further or different relief to which Plaintiff may be entitled.

# Ninth Cause of Action

64.    Plaintiff Morris realleges and incorporates by reference paragraphs 1 through 38 as if it is set forth fully herein.

65.    Coram's unwanted contact with Morris' family members and his claims that Coram was going to seize family property held in Morris' name caused Morris' alienation from family members. His attempt to force Morris to relinquish control over the family property eventually caused him to seek false testi-

mony through threats and coercion resulting in a complaint being filed against Coram by Morris with the FBI. This action by Coram constitutes extortion and coercion and was an illegal intrusion into Morris' family affairs. Coram withheld vital evidence despite a subpoena and he may have caused The Magistrates office to refuse to transport Morris to the civil hearing.

66.    This action by Coram caused fear and uncertainty among Morris' family members and a distrust by them of Morris. This action by Coram caused Morris' property to be unlawfully seized without his evidence, testimony or presence.

**Wherefore,** Plaintiff Morris demands:

a.    A judgement against the Defendants in the amount of $300,000 compensatory damages and $15,000 punitive damages.

b.    Such action, further or different relief to which Plaintiff may be entitled.

# Tenth Cause of Action

67.    Plaintiff realleges and incorporates by reference paragraphs 1 through 38 as if it is set forth fully herein.

68.    Coram's description of Morris with untrue characteristics and his claim that Morris is a child predator, child molester etc., without a basis in fact has caused irreparable damage to Morris reputation in the community. Coram's press releases contained false and derogatory information that had no basis in fact and have caused the false belief on a national scale that Morris has in the past committed unspeakable and despicable crimes against children. This has ruined Morris' reputation, caused Morris to be unlawfully imprisoned and made it impossible for Morris to receive a fair trial on the false and misleading charges generated by Coram. Coram is guilty of slander and defamation of character.

**Wherefore,** Plaintiff Morris demands:

a.    A judgement against the defendants in the amount of $10,000.00 compensatory damages and $20,000 punitive damages.

b.    Such action, further or different relief to which Plaintiff may be entitled.

# Verification

Before me, the undersigned notary public, appeared George Hoey Morris, who being duly sworn, did sign his name in attestation that the foregoing factual allegations contained in this complaint are true and correct to the best of his knowledge, information and belief on this the _____09_____ day of _____Nov_____ 2005.

_____
George Hoey Morris

**Sworn to and subscribed** before me on this the ___9 th___ day of ___November___ 2005.

_____
Notary Public

My commission expires ___03-17-09___

(Seal)

# 𝕮𝖊𝖗𝖙𝖎𝖋𝖎𝖈𝖆𝖙𝖊 𝖔𝖋 𝕾𝖊𝖗𝖛𝖎𝖈𝖊

I hereby certify that on the 21st day of November 2005 that I provided a true and correct copy of the foregoing to the following Defendants by placing same in the United States mail postage prepaid and properly addressed as follows:

United States Department
of Homeland Security
Legal Department
Washington DC 20528

United States Customs and
Immigration Enforcement and
Department of Homeland Security
900 Western American Circle
Suite 301
Mobile, Alabama 36609

US Immigration and Customs Enforcement
301 South Ripley Street
Montgomery, Alabama 36104

Thomas Coram, Jr.
c/o Thomas Coram
745 Kowaliga Road
Eclectic, Alabama  36024

Complaint filed:
US District Court
Middle District - Northern Division
P.O. Box 711
Montgomery, Alabama  36101

## GEORGE HOEY MORRIS

GeorgeHoeyMorris.com
(website address)

Federal Annex
Montgomery City Jail
P.O. Box 159
Montgomery, Alabama  36101